IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE ANDRES OBANDO-SEGURA,[1] | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-17-3190 |
| JEFFERSON B. SESSIONS, et al.,[2] | * | |
| Respondents. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Respondents Jefferson B. Sessions, Kirstjen M. Nielsen,[3] Thomas D. Homan, Dorothy Herrera-Niles, Charles Lee, and Donna Bounds' Response to the Court's November 6, 2017 Show Cause Order and Motion to Dismiss (ECF No. 6). Petitioner Jose Andres Obando-Segura challenges his detention under 8 U.S.C. § 1226(c) (2018) by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The Motion is ripe for disposition, and no hearing is necessary at this time. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts (Feb. 1, 2010)[4] and Local Rule 105.6 (D.Md. 2016); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner

---

[1] The Court will direct the Clerk to amend the docket to reflect Petitioner Jose Andres Obando-Segura's full name.

[2] The Court will direct the Clerk to amend the docket to reflect Respondent Sessions' full name.

[3] On December 16, 2017, Nielsen was sworn in as the Secretary of Homeland Security. Accordingly, the Court substitutes Nielsen for Jeh Johnson. See Fed. R. Civ. P. 25(d).

[4] The Court may apply the Rules Governing Section 2254 Cases to habeas corpus actions filed under 28 U.S. § 2241 (2018). See Rule 1(b), Rules Governing Section 2254 Cases.

is not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth more fully below, the Court will deny without prejudice Respondents' Motion and require the parties to submit supplemental briefs and supplement the record.

## I. BACKGROUND

Obando-Segura has been detained at the Worcester County Detention Center in Snow Hill, Maryland since December 7, 2016, pending removal from this country to Colombia, where he is a citizen. (Pet. Writ Habeas Corpus ["Pet."] at 2–3, ECF No. 1). In 2001, Obando-Segura arrived in the United States, along with his parents, on a B-2 Tourist Visa, along with his parents. (Id. at 4; Resp. Order Show Cause & Mem. Supp. Mot. Dismiss ["Resp."] Ex. A at 3, ECF No. 6-1). He was eleven years old at the time of his arrival. (Pet. at 4). His parents overstayed their visas, and Obando-Segura never became a citizen of the United States. (See id.).

On August 19, 2008, Obando-Segura was convicted of "sell/furnish/etc. marijuana/hash," in violation of California law. (See Resp. Ex. A at 3; id. Ex. B at 2, ECF No. 6-1). He was sentenced to serve four years in a California state prison. (See Resp. Ex. A at 3; id. Ex. B at 2).

DHS commenced removal proceedings against Obando-Segura on August 31, 2012. (Resp. Ex. A at 3). DHS asserted that Obando-Segura was "removable" under the Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i), alien convicted of a controlled substance violation, and § 237(a)(1)(B), alien who remained in the United States longer than permitted. (Resp. Ex. A at 3). On September 9, 2012, DHS notified

Obando-Segura that he would be detained pending an Immigration Judge's ("IJ") determination of his removability. (Resp. Ex. C, ECF No. 6-1).

On October 11, 2012, an IJ in Florence, Arizona found Obando-Segura removable based on his admission that he was not a citizen of the United States, had overstayed his visa, and had been convicted of a controlled substance offense in 2008. (Resp. Ex. B at 2, 4). The IJ further concluded that Obando-Segura was ineligible for cancellation of removal. (Id.). The IJ ordered Obando-Segura removed to Colombia. (Id. at 5). Obando-Segura appealed to Board of Immigration Appeals ("BIA"). (See Resp. Ex. G, ECF No. 6-1).

On February 7, 2013, the BIA dismissed Obando-Segura's appeal and denied his motion to remand the proceedings. (Resp. Ex. G, ECF No. 6-1). The BIA observed that the IJ's finding that DHS had met its burden of proof was without error because Obando-Segura admitted that "he was convicted and found guilty" on August 19, 2008, of a controlled substance offense under California law for which he was sentenced to four year's imprisonment. (Id. at 2). Additionally, the IJ's conclusion that Obando-Segura did not fall within the exception to removability for persons convicted of an offense involving possession for one's own use of 30 grams or less of marijuana was correct. (Id. at 3). Obando-Segura was also unable to establish that he was eligible for lawful permanent residence, making him ineligible for cancellation of the removal order. (Id.). Obando-Segura appealed to the United States Court of Appeals for the Ninth Circuit. (See Resp. Ex. K at 1, ECF No. 6-1).

On March 26, 2013, ICE reviewed Obando-Segura's detention while his appeal was pending with the Ninth Circuit. (See Resp. Ex. E at 1, ECF No. 6-1). ICE determined that Obando-Segura would remain detained because, "[b]ased on [his] criminal history," he "failed to establish that [he is] not a danger to the community or a flight risk." (Id. at 2). ICE further noted that if Obando-Segura's appeal to the Ninth Circuit was unsuccessful, his "removal is reasonably foreseeable in that ICE is able to effectuate removals to Colombia, and there are no known impediments to removal at this time." (Id.).

On August 19, 2013, the BIA denied as untimely Obando-Segura's motion to reopen proceedings for purposes of pursuing asylum. (Resp. Ex. H at 2, ECF No. 6-1). The BIA also found that Obando-Segura had not satisfied his heavy burden of establishing a material change in circumstances in Colombia regarding treatment of homosexuals such that his safety would be in jeopardy, which would have excused the untimeliness of his motion and entitled him to review. (Id.). Further, Obando-Segura had not raised an asylum claim in prior proceedings, despite the opportunity to do so. (Id.).

On June 5, 2014, the BIA denied Obando-Segura's second motion to reopen proceedings as both untimely and "number-barred."[5] (Resp. Ex. I at 2, ECF No. 6-1). The BIA further observed that it would have denied the motion even if it were not otherwise barred because it represented Obando-Segura's attempt to revisit previously

---

[5] In general, a person may file only one motion to reopen immigration proceedings. 8 U.S.C. § 1229a(c)(7)(A) (2018).

rejected arguments. (Id.). Moreover, the record "refutes the . . . allegation that the IJ failed to permit [Obando-Segura] to apply for asylum or other related relief from removal." (Id.). On August 22, 2014, the BIA denied Obando-Segura's motion to reconsider its decision on his motion to reopen proceedings and concluded that no errors of fact or law were made in the previous decision. (Resp. Ex. J at 2, ECF No. 6-1).

On October 28, 2014, an IJ issued an order requiring Obando-Segura's release from immigration detention on $20,000.00 bond. (Resp. Ex. F, ECF No. 6-1). Obando-Segura posted bond and was released after being detained for more than two years. (Id.).

On August 25, 2014, the Ninth Circuit remanded Obando-Segura's case on the government's unopposed motion to remand, resulting in the BIA's February 10, 2015 review of his case. (Resp. Ex. K at 2). The BIA remanded proceedings to an IJ to allow for consideration of Obando-Segura's potential eligibility for relief from the order of removal. (Id.). The BIA instructed that "[o]n remand, the parties should have the opportunity to update the evidentiary record." (Id. at 3). Specifically, Obando-Segura was permitted to submit updated applications for relief, including one for asylum, and DHS was permitted to amend its notice to appear to include additional criminal convictions that made Obando-Segura removable. (Id.)

On February 23, 2015, DHS moved to change the venue of proceedings from Arizona to Baltimore, Maryland where Obando-Segura was then located. (Resp. Ex. L, ECF No. 6-1). The next day, the IJ granted DHS's motion. (Id. Ex. M, ECF No. 6-1).

Obando-Segura failed to appear at a May 3, 2016 hearing because he was in the custody of the State of Maryland. (Resp. Ex. N, ECF No. 6-1). As a result, an IJ issued

5

another order of removal in Obando-Segura's case. (Id.). On May 17, 2017, once Obando-Segura was located, the IJ reopened his proceedings. (Resp. Ex. O, ECF No. 6-1).

Another hearing was held on May 17, 2017, and the IJ again ordered Obando-Segura's removal to Colombia. (Resp. Ex. O, ECF No. 6-1). At that hearing Obando-Segura sought a continuance because he planned to file a U visa.[6] (Id.). The IJ denied Obando-Segura's request because he had not filed his U visa application had yet and the IJ was unwilling to grant a continuance for a "collateral matter."[7] (Id. at 1–2). Additionally, the IJ denied Obando-Segura's request for a post-hearing voluntary departure because "[h]e does not meet the good moral character requirement" given his incarceration due to a criminal conviction. (Id. at 2).

Obando-Segura appealed the order of removal to the BIA. (Resp. Ex. P, ECF No. 6-1). At the time of his appeal, Obando-Segura had filed a petition for a U visa with U.S. Citizenship and Immigration Services ("USCIS"). (Id. at 2). He asserted that his case should be remanded to allow him to pursue a U visa and claimed that DHS had not proved his removability by clear and convincing evidence. (Id.). On October 6, 2017,

---

[6] "U nonimmigrant status provides immigration protection to crime victims who have suffered substantial mental or physical abuse as a result of the crime. The U visa allows victims to remain in the United States and assist law enforcement authorities in the investigation or prosecution of the criminal activity." Victims of Human Trafficking and Other Crimes, U.S. Citizenship & Immigration Servs. (Aug. 25, 2017), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes.

[7] On or about February 21, 2015, Obando-Segura was the victim of a violent crime and, on that basis, seeks a U visa allowing inadmissibility grounds to be waived. (Pet. at 5; see also id. Ex. A). Obando-Segura provides no details regarding his U visa application, nor does he include information tending to show that his application for a U visa is likely to be approved.

6

the BIA remanded the proceedings to the IJ so that Obando-Segura could request a continuance or administrative closure and to address his alternative request for voluntary departure. (Id.). In addition, the BIA noted that although Obando-Segura's admission that he was an alien who entered the United States as a visitor and that overstaying his visa was sufficient to find him removable, the record did not contain documentation regarding Obando-Segura's criminal convictions. (Id.). The BIA directed that DHS should be permitted to substantiate the criminal convictions on remand. (Id.; see also Ex. D at 2–6).

Since ICE detained Obando-Segura on December 7, 2016, has had at least two ICE detention reviews. (Pet. at 6).

On October 30, 2017, with his petition for a U visa is still pending, Obando-Segura filed this Petition for Writ of Habeas Corpus challenging his continued detention pending removal proceedings. (ECF No. 1). On November 6, 2017, the Court issued a Show Cause Order directing Respondents to show cause within forty days why Obando-Segura's Writ should not be granted. (ECF No. 2). Respondents filed a Response on December 11, 2017. (ECF No. 6). On January 2, 2018, Obando-Segura filed a Reply. (ECF No. 7).

## II. DISCUSSION

Obando-Segura filed this Petition to challenge his current detention, which has now lasted for more than twenty months. He asserts, on due process grounds, that his detention is unreasonable and that he is entitled to a bond hearing with subsequent release pending the consideration of his application for a U visa. He maintains that the ICE

7

detention reviews "are one-sided and totally biased" because "ICE categorically denies release of detainees" and grants "there is no neutral arbitrator." (Pet. at 6). Obando-Segura seeks an order from this Court requiring the "immigration court to hold an immediate bond hearing where the government has the burden of proof by clear and convincing evidence that [Obando-Segura] is either a danger to the community or a flight risk to justify further detention."[8] (Id.).

Respondents counter that 8 U.S.C. §1226(c) requires mandatory detention to ensure that criminal aliens, like Obando-Segura, do not abscond or pose additional danger to the public while removal proceedings are pending. They contend that it is undisputed that Obando-Segura's removal proceedings are still pending and that Obando-Segura does not, and cannot, dispute that his August 19, 2008 California conviction "rendered him subject to mandatory detention." (Resp. at 6).

The Fifth Amendment to the United States Constitution prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. This due process protection extends to aliens in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993).

Section 1226(c)(1) mandates that the Attorney General detain any alien already in the country pending the outcome of removal proceedings who has committed certain criminal offenses and terrorist activities. § 1226(c)(1)(A)–(D). The Attorney General may release an alien detained under § 1226(c)(1) "only if" he concludes that it is

---

[8] Initially, Obando-Segura sought a Court order requiring his release. He abandoned this position in light of the United States Supreme Court's holding in Jennings v. Rodriguez, 138 S.Ct. 830 (2018), which the Court discusses in detail below.

"necessary" for witness-protection purposes and he is satisfied that "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2). Any release under § 1226(c)(2) requires the Attorney General use a procedure that considers the severity of the alien's criminal offense. Id.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court of the United States found that the mandatory detention of an alien under § 1226(c) was a constitutionally permissible part of the removal process for the "limited period" necessary to complete the removal proceedings. Id. at 531. Demore generally upheld the constitutionality of § 1226, with the caveat that the Attorney General may detain an alien without conducting an individualized bail hearing where the alien concedes that he is removable within the meaning of 8 U.S.C. § 1226(c)(1)(B). See Demore, 538 U.S. at 522–23, 531.

The Demore Court distinguished Zadvydas v. Davis, 533 U.S. 678 (2001), a case in which the Supreme Court held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, the statute that governs the detention of aliens ordered removed. Demore, 538 U.S. at 527–30. The Court reasoned that: (1) an alien detained for the limited period necessary to effect a removal pursuant to § 1226(c) was not detained indefinitely; and (2) mandatory detention pursuant to 8 U.S.C. § 1226(c) was generally of a much shorter duration than "post-removal-period detention pursuant to § 1231." Demore, 538 U.S. at 530. The Court observed that aliens detained under § 1226(c) spend an average of forty-seven days in government custody pending the conclusion of removal proceedings and an average of four months in custody

if they appeal. Id. at 529. As a result, this "limited period" of detention during removal proceedings was "a constitutionally permissible part of the process." Id. at 530.

After Obando-Segura filed his Petition and after Respondents' Motion was full briefed, the Supreme Court issued its opinion in Jennings v. Rodriguez, 138 S.Ct. 830 (2018),[9] which again considered § 1226(c)'s mandatory detention provision. The Supreme Court held, based on the statutory text alone, that § 1226(c) authorizes prolonged immigration detention. Id. at 846. It expressly rejected the Ninth Circuit's reading of § 1226(c) to require periodic bond hearings every six months. Id. The Court noted that § 1226(c) "does not on its face limit the length of the detention it authorizes." Id. at 846. Rather, it "mandates detention 'pending a decision on whether the alien is to be removed from the United States,' and it expressly prohibits release from that detention except for narrow, witness-protection purposes." Id. (quoting § 1226(a)). The Court further noted that § 1226(c) is distinguishable from the provision at issue in Zadvydas, § 1231 because "detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings." Id. (quoting Demore, 538 U.S. at 529). The Supreme Court expressly left open, however, the question of whether such detention is constitutional under the Due Process Clause. Id. at 852. Therefore, even though the plain language of § 1226(c) permits mandatory, indefinite detention of a criminal alien, due process concerns may entitle such an alien to a bond hearing.

---

[9] Recognizing that the decision in Rodriguez changes his argument that § 1226 must be read to include implicit temporal limitations on detention as a matter of constitutional avoidance, Obando-Segura filed a Supplemental Brief addressing the decision. (ECF No. 8).

10

All of the U.S. Courts of Appeal to address due process issues with § 1226(c) have rejected Respondents' argument that the government may indefinitely detain an alien under the provision. Instead, these courts read § 1226(c) to contain an implicit time limit—a reasonable limitation—to avoid constitutional concerns. See, e.g., Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011); Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2003); accord Sopo v. U.S. Attorney Gen., 825 F.3d 1199, 1214 (11th Cir. 2016), vacated, 890 F.3d 952 (11th Cir. 2018);[10] Reid v. Donelan, 819 F.3d 486, 498 (1st Cir. 2016), cert. denied, 138 S.Ct. 1547 (2018), opinion withdrawn on reconsideration, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018);[11] Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015) ("To avoid constitutional concerns, . . . § 1226(c)'s mandatory language must be construed to contain an implicit reasonable time limitation" (citation and internal quotation marks omitted)), rev'd sub nom. Jennings v. Rodriguez, 138 S.Ct. 830; Lora v. Shanahan, 804 F.3d 601, 606 (2d Cir. 2015) (holding that "to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation"), cert. granted, judgment vacated, 138

---

[10] The Eleventh Circuit held that § 1226(c) contained an implicit time limit in Sopo, 825 F.3d at 1214. The Court subsequently vacated its opinion in Sopo after Sopo was removed from the United States, mooting his appeal. Sopo, 890 F.3d at 953–54. Sopo conceded that his removal mooted his appeal and did not oppose the government's request that the Eleventh Circuit vacate its decision. Id. at 954.

[11] Although the First Circuit withdrew its opinion it Reid, it affirmed the district court's judgment as to its individualized holding with respect to Reid's habeas corpus petition that Reid's detention had become unreasonable, and therefore he was entitled to a bond hearing. Reid v. Donelan, No. 14-1270, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018); see Reid, 819 F.3d at 501.

S.Ct. 1260.[12] As a result, the Third and Sixth Circuits have adopted an "individualized reasonableness inquiry" to determine whether an alien detained pursuant to § 1226(c) is entitled to a bond hearing. Chavez-Alvarez, 783 F.3d at 478; Diop, 656 F.3d at 235; Ly, 351 F.3d at 271; accord Reid, 819 F.3d at 498. Although the Fourth Circuit has not weighed in on this issue, this Court and one other district court within the Fourth Circuit have applied the individualized reasonableness inquiry. See Jarpa v. Mumford, 211 F.Supp.3d 706, 717 (D.Md. Sept. 30, 2016); Mauricio-Vasquez v. Crawford, No. 116CV01422AJTTCB, 2017 WL 1476349, at *4 (E.D.Va. Apr. 24, 2017); Haughton v. Crawford, No. 116CV634LMBIDD, 2016 WL 5899285, at *6 (E.D.Va. Oct. 7, 2016)).

In Jarpa, this Court determined that once pre-removal § 1226(c) detention becomes "unreasonably prolonged," the detainee must be afforded an individualized bail review. 211 F.Supp.3d at 717. Relying on our sister circuits that have adopted the case-by-case assessment, the Jarpa Court applied a multi-factor test to determine whether a detainee's detention has become unreasonable, entitling him to a bail hearing. Id. (quoting Lora, 804 F.3d at 614). These factors, though not exhaustive, include: (1) "the length of time that the criminal alien has been detained without a bond hearing"; (2) "the reason for prolonged detention"; (3) "whether any impediments exist to final removal if ordered"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; (5) "whether the facility for

---

[12] The Supreme Court's holding in Rodriguez eliminated the Second and Ninth Circuit's bright-line rule requiring a bond hearing after six months of detention for any alien held pursuant to § 1226(c). See 138 S.Ct. at 847; Shanahan v. Lora, 138 S. Ct. 1260 (2018) (vacating and remanding to the Second Circuit in light of Rodriguez).

the civil immigration detention is meaningfully different from a penal institution for criminal detention"; and (6) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)." Id. (citing Sopo, 825 F.3d at 1217–19; then citing Reid, 819 F.3d at 500).[13] In light of the Supreme Court's holding in Rodriguez, the Court sees no reason to depart from the Jarpa Court's approach to determining when an alien detained under § 1226(c) is entitled to a bond hearing.

In this case, the Court declines to issue a decision on Obando-Segura's Petition and Respondents' Motion on the filings and record before it. As to the parties' arguments, neither Respondents nor Obando-Segura addressed the Jarpa factors in their filings. With regard to the record, the basis for Obando-Segura's removal appears to fluctuate between an overstay allegation and a criminal conviction that the BIA has determined there is no record evidence to support. Indeed, the BIA remanded Obando-Segura's removal proceedings to the IJ for the purpose of supplementing the record regarding his criminal convictions, even though he is removable on the basis of his admission that he overstayed his visa. In addition, absence of such evidence begs the question whether Obando-Segura can be considered detained pursuant to § 1226(c)'s mandatory detention provisions. There is also nothing in the record before this Court regarding Obando-Segura's flight risk or the danger he poses to society at large if he were to be released. Nor is there evidence in the record regarding the substance of the

---

[13] On November 28, 2016, the Government appealed the Court's decision in Jarpa to the Fourth Circuit. Notice Appeal, Jarpa, No. PX 16-2649 (D.Md. Nov. 28, 2016), ECF No. 19. The Government voluntarily dismissed its appeal on June 11, 2018. Order, Jarpa, No. PX 16-2649 (D.Md. June 11, 2018), ECF No. 23.

13

ICE detention reviews Obando-Segura has undergone since being detained. In short, the Court concludes that it is unclear at this time whether Obando-Segura is entitled to a bond hearing.

Accordingly, the Court will direct the parties to submit supplemental briefs addressing the Jarpa reasonableness factors as applied to this case. The Court will further direct the parties to supplement the record with any decisions, orders, transcripts of proceedings, or other relevant documents concerning review of Obando-Segura's continued detention, the basis of his removability, and the status of his U visa application. The parties shall also advise the Court if a hearing in this matter is necessary and, if so, the estimated length of the hearing.

### III. CONCLUSION

For the foregoing reasons, the Court will deny without prejudice Respondents' Motion to Dismiss and require the parties to submit supplemental briefs addressing the Jarpa factors and supplement the record. A separate Order follows.

Entered this 14th day of September, 2018

/s/
George L. Russell, III
United States District Judge